**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000177
28-AUG-2024
08:02 AM
Dkt. 71 SO**

CAAP-24-0000177

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF B CHILDREN

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 20-00214)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and Nakasone, JJ.)

Father-Appellant (**Father**) appeals from the Order Terminating Parental Rights (**TPR Order**), entered on March 6, 2024, in the Family Court of the First Circuit (**Family Court**).[1] The TPR Order terminated Father's parental rights to Father and Mother-Appellee's (**Mother's**) three young children (**Children**). It is undisputed that Petitioner-Appellee State of Hawaiʻi Department of Human Services (**DHS**) took custody of the Children after Mother called the Honolulu Police Department on December 18, 2020, and said she was unable to care for the Children.

On appeal, Father contends that the Family Court erred in granting DHS's June 28, 2022 Motion to Terminate Parental

---

[1] The Honorable Natasha R. Shaw presided.

Rights (**TPR Motion**) because: (1) DHS did not make reasonable efforts at reunification; (2) the evidence was insufficient for the Family Court to find, by clear and convincing evidence, that Father would not be able to provide a safe home for the Children within a reasonable time; and (3) the Family Court's determination of witness credibility is clearly erroneous. Father challenges Findings of Fact (**FOFs**) 41, 73, 90, 92, 95, 96, 98-100, 105-107, 109, 111-114, 116, 121, 122, 124, and 125, and Conclusions of Law 135, 152-156, and 160.[2]

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's points of error as follows:

(1) Father contends that DHS did not make reasonable efforts to reunify the Children with him because DHS restricted his visits with the Children based on Mother's unsupported claim that he was still using drugs. Then, in May 2022, his visitation with the Children ceased all together because Mother filed a petition for temporary restraining order (**TRO**) and included the Children in her petition, and DHS took no action to have the Children removed from the TRO. Father also argues that the Children's therapist was not working on reunifying the Children with him, but instead helping them adjust to the foster home.

We examine Father's arguments in light of the entire record in the Family Court. First, we note that DHS was not

---

[2] Father's challenges to the Family Court's legal conclusions are interwoven into his arguments and are addressed accordingly.

obligated to seek an amendment of Mother's TROs on his behalf. See, e.g., In re Interest of K Children, No. CAAP-21-0000350, 2022 WL 2303894, at *8 (Haw. App. June 27, 2022) (SDO) (rejecting Father's argument that DHS was obligated to advocate for dismissal of Mother's TRO as part of reasonable efforts of reunification).  In addition, DHS had grounds for limiting Father's visits, besides the information reported by Mother, and it was not unreasonable for DHS to seek help for the Children to adjust to the foster home.

Unchallenged FOFs from the Family Court are binding on the appellate court.  Balogh v. Balogh, 134 Hawaiʻi 29, 33 n.3, 332 P.3d 631, 635 n.3 (2014).

When the Children were first taken into custody, on December 22, 2020, Father told DHS he was not in a position to care for the Children.  In December 2023, Father told DHS that he was not ready for the Children to be reunified with him now or in 6 months.  Dr. Marcin Bury, the Children's therapist, testified that the Children were suffering from adjustment disorders and separation anxiety disorder while in the foster home, and it was expected the Children would remain with the foster family for some time.  As the custodian, DHS was obligated to provide adequate psychological care for the Children in a timely manner. Hawaiʻi Revised Statutes § 587A-15(b)(3) (2018).

The following uncontested FOFs establish a pattern of drug use and domestic violence by Father:

> 74.  Father started using methamphetamines at the age of ten.

75. In October 2020, Father was arrested for abuse of a family member when an argument with Mother regarding his drug use escalated into domestic violence.

76. In December, 2020, Father was willing to do services and in day drug treatment at Poʻailani. Father did not want to retraumatize the Children and was in no position to care for them.

. . . .

79. In June 2021, Father was clinically discharged from the Poʻailani day drug treatment program.

80. In September, 2021, Father was kicked out of the family home because he was using crystal meth and fought with Mother. Father did not participate in a one-time UA exam recommended by the DHS because of his work schedule.

81. In October, 2021, Father and Mother drove together to the TRO hearing that Mother filed. Father would not let Mother out of the car and the TRO was dismissed due to Mother's non-appearance.

82. In March 2022, Mother had bruises on her arms and a broken tooth due to a physical altercation with Father. Father was using drugs again and it was difficult to participate in random UA exams due to his work schedule.

83. In April 2022, after a verbal altercation with Father, Mother admitted that she needs to stay away from him because he is abusive.

84. In May, 2022, Father was arrested for violating a TRO that Mother filed.

. . . .

86. In October, 2023, although a TRO was in place, Father still contacted Mother and engaged in domestic violence. Father went to Mother's apartment and "trashed" it.

87. In November, 2023, Father found Mother at Waimanalo Beach park and "beat" her. Father was also arrested for violating a TRO that paternal grandmother (his mother) filed against him. Father did not understand how his "business" with paternal grandmother or with Mother was related to this case.

. . . .

89. In April, 2023, Father got into a substance abuse treatment program at Queen's Day.

Father testified that he was discharged from the Queen's drug treatment program in July 2023 after he admitted to "meth use and MDMA." Queen's recommended residential treatment, which he refused. Given, *inter alia*, the uncontested findings of

Father's drug use and domestic violence, along with substantial evidence of Father's failure to address his domestic violence issues as required by the court-ordered service plan, Father's inconsistent visits when visitation was allowed, and Father's lack of insight into his inability to consistently and timely demonstrate that he could safely care for the Children, we conclude that the Family Court was not wrong to determine that DHS had made reasonable efforts at reunification.

(2)  Father challenges FOFs 73, 92, 95, 96, 98, and 124, arguing that his evidence showed he was addressing the issues that resulted in DHS bringing the case.[3]  We conclude that

_____

[3]     These challenged FOFs state:

73.     Father suffers from a pattern of doing well in services, then returning to substance use and domestic violence with Mother.

. . . .

92.     Father had participated in a few substance abuse assessments/programs and random drug urinalyses, however, was unable to demonstrate consistent and prolonged sobriety.

. . . .

95.     Father completed domestic violence/anger management education, however, was unable to demonstrate any skills or knowledge that may have been acquired from those classes.  Father lacks the insight as to how his turbulent relationship with Mother directly affects the Children's development and well-being.

96.     Father participated in individual therapy/counseling with Alex Gino, however, failed to gain any healthy stress management skills.  Father failed to take accountability for the direction of the case, continued to blame others for his situation, and used drugs as his way of "coping".  Father testified that he did not share anything about his domestic violence issues with Mr. Gino because Father did not feel that it was a problem at that time.

. . . .

98.  Based upon credible evidence, throughout these proceedings, Father has no insight into his recurring problems with substance abuse and domestic violence with Mother, and his inability to safely care for the Children.

(continued...)

these FOFs are not clearly erroneous, as they are supported by substantial evidence in the record, including the Family Court's determinations of credibility.

Father's involvement with DHS was due to his history of substance abuse and domestic violence with Mother. The evidence in the record supports that Father had not adequately addressed either his substance abuse or domestic violence issues despite having more than three years to work on it.

As the uncontested FOFs show, Father was clinically discharged from the Poʻailani day drug treatment program in June 2021 but was using drugs again in September 2021. Father then got into the Queen's Day program in April 2023, but according to his testimony, he was discharged in July 2023, after admitting to drug use. He then sought treatment from Gino Behavioral Health, and tested positive for meth near the beginning of his treatment with them. Thus, Father's drug use was a recurring problem.

Father's domestic violence also remained a problem. In October 2023, Father "trashed" Mother's apartment, and he was arrested for violating a TRO that his own mother had against him. FOFs 86, 87.

---

[3](...continued)
Throughout this case, Father prioritized other things over the Children and reunification.

. . . .

124. The testimony of Father is credible in part and not credible in part. The court finds Father credible in his love for his Children. The court does not find Father credible with regard to his insight and key respects concerning his willingness and/or ability to provide a safe family home within any reasonably foreseeable period of time.

Father testified that he was working on domestic violence issues through the PACT Family Peace Center. However, the evidence in the record reflects that as of March 30, 2022, Father participated in only two sessions and missed three sessions.

There was substantial evidence that supported the Family Court's finding of a pattern of relapses by Father after he received treatment. The Family Court did not clearly err in finding clear and convincing evidence that Father was not presently, nor in the reasonably foreseeable future, willing and able to provide the Children with a safe family home.

(3) Father contends that the Family Court clearly erred in finding DHS Social Worker Melissa Lubick (**Lubick**), and the Court-Appointed Special Advocate/Guardian Ad Litem credible, and Alex Gino (**Gino**) not credible.

Any conflict between the testimony of Lubick and Gino was for the Family Court to resolve. See DL v. CL, 146 Hawaiʻi 328, 336, 463 P.3d 985, 993 (2020) (issues dependent upon the credibility of witnesses and the weight of the evidence are within the province of the trier of fact). We conclude that Father has failed to demonstrate that the Family Court's FOFs and COLs are clearly erroneous.

For these reasons, the Family Court's March 6, 2024 TPR Order is affirmed.

DATED: Honolulu, Hawaiʻi, August 28, 2024.

On the briefs:

Tae Chin Kim,
for Father-Appellant.

Eric J. Alabanza,
Julio C. Herrera,
Ian T. Tsuda,
Kellie M. Kersten,
Deputy Attorneys General,
for Petitioner-Appellee
 THE DEPARTMENT OF HUMAN SERVICES.

Crystal M. Asano,
for COURT-APPOINTED SPECIAL ADVOCATE.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge